**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| FEDERAL DEFENDER PROGRAM, INC. on behalf of itself and its clients detained at Robert A. Deyton Detention Facility in Lovejoy, Georgia.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES MARSHALS SERVICE,<br><br>Defendant. | Civil Action File No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Federal Defender Program, Inc. ("FDP") on behalf of itself and its clients detained at Robert A. Deyton Detention Facility in Lovejoy, Georgia ("Client Detainees"),[1] by and through their counsel, bring this Complaint against The United States Marshals Service ("USMS") as follows:

**SUMMARY OF CLAIMS**

1. This is an action by FDP against USMS stemming from USMS's decision to relocate all of the more than 400 pre-trial detainees housed at RADD, including more than 200 Client Detainees, from RADD to Irwin County Detention

[1] Client Detainees shall include FDP clients detained at RADD as of September 18, 2026.

Center ("Irwin County") in violation of the Sixth, Fifth and Fourteenth Amendments, and in violation of the Administrative Procedures Act.

2. On September 21, 2026, the USMS began relocating the RADD detainees. RADD is located within the Northern District of Georgia—the same judicial district the Client Detainees are provided access to representation, and approximately 25 miles from this judicial district's headquarters at the Richard B. Russell Building and U.S. Courthouse in Atlanta ("Atlanta Courthouse").

3. USMS plans to relocate all RADD detainees, including the more than 200 Client Detainees, in waves, through October 31, 2026. To date, USMS has relocated at least one Client Detainee from RADD to Irwin County. Irwin County is located in a different judicial district more than 190 miles south of the Richard B. Russell Federal Building and Courthouse in Atlanta.

4. Atlanta is one of the ten most populous metropolitan areas in the United States. If the transfer is completed as planned, Atlanta will be the only one of the ten most populous metropolitan areas in the United States in which federal pretrial detainees do not have a detention facility located within the metropolitan area.

5. USMS's relocation of RADD Detainees would result in the defendants prosecuted in one of the nation's largest metropolitan areas being routinely detained approximately 190 miles from the courthouse in which their cases are pending and from the lawyers responsible for representing them.

6. All stakeholders—the U.S. Attorney, Federal Public Defender, U.S. Marshal and the Court oppose the USMS' decision to relocate the RADD detainees to Irwin County.[2]

7. The Chief Judge of the U.S. District Court for the Northern District of Georgia, writing on behalf of the entire court, has described the proposed relocation as a "catastrophe." (A true and correct copy of the letter ("Chief Judge Letter") is attached hereto as Exhibit 1.) The district court raised fiscal concerns, safety concerns due to the increased USMS workload necessitated by the relocation, concerns regarding the administration of justice due to resulting scheduling conflicts, and potential constitutional issues that may be raised by defendants surrounding their ability to adequately prepare a defense. *Id.*

8. The FDP, for its part, will be required to travel more than six-hours round trip to meet in person with Client Detainees, resulting in a significant increase in expenditure of resources, including through costs and attorney and other professional time, such that impedes FDP's ability to comply with its ethical and professional obligations in providing Client Detainees the legal assistance

[2] CBS News, *Georgia Federal Detainees Private Prison Transfer*, September 18, 2026 (available at https://www.cbsnews.com/news/georgia-federal-detainees-private-prison-transfer/, last visited October 6, 2026); Atlanta Journal Constitution, *Judge Calls Detainees Transfer from Clayton County to Irwin a Terrible Idea*, September 22, 2026 (available at https://www.ajc.com/news/2026/09/judge-calls-detainees-transfer-from-clayton-county-to-irwin-a-terrible-idea/, last visited October 6, 2026).

guaranteed by the Constitution, and mandated by the Criminal Justice Act ("CJA") and CJA plan for the Northern District of Georgia ("CJA Plan").

9. As set forth below, the relocation presents an immediate and irreparable harm.

10. USMS's actions will continue unless restrained by this Court.

11. In addition to the Court's empowered by its inherent powers to act to remedy this imminent and irreparable harm, the Court is also empowered through the All Wits Act to remedy the matter and prevent the USMS's actions. 28 U.S.C. § 1651(a) (A district court "may issue all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law."); S*kanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023) (citation omitted); *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1200 (S.D. Fla. 2020) (recognizing appropriateness of injunctive relief during COVID-19 pandemic).

## **THE PARTIES**

12. Plaintiff Federal Defender Program, Inc. is a Community Defender Organization—a non-profit defense counsel service with principal offices located at 101 Marietta Street NW, Suite 1500, Atlanta, GA 30303.

13. FDP was established pursuant to the CJA Plan adopted by the judges of the Northern District of Georgia. The CJA Plan is required by the Criminal Justice Act of 1964, 18 U.S.C. § 3006A. FDP is dedicated to offering public defense services

to indigent persons in federal criminal cases in the Northern District of Georgia.

14. Defendant United States Marshals Service is a component of the United States Department of Justice. It is the federal agency that is responsible for protecting federal judges and courtroom proceedings, and transporting detainees in federal custody or under appropriate agreements, among other responsibilities.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. 702. The FDP seeks declaratory and injunctive relief pursuant to 5 U.S.C. § 706 and 28 USC §§ 2201 and 2202.

16. Venue is proper under 28 U.S.C. § 1391(b)(2) and (e)(1) because a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred within this District, the FDP's principal offices are located in this District, and USMS is an agency of the United States acting in their official capacity.

## FACTS COMMON TO ALL CLAIMS

### A. RADD

17. The Robert A. Deyton Detention Facility ("RADD") is a private detention facility that houses federal pre-trial and criminal detainees under USMS. RADD also operates a civil detention center under the U.S. Immigration and Customs Enforcement ("ICE"). RADD houses almost 400 detainees, including more than 200 Client Detainees. The Client Detainees are federal pre-trial detainees under

USMS.

18. RADD is operated by the GEO Group, Incorporated, pursuant to a contract that identifies a February 2028 expiration date ("RADD Contract"). (A true and correct copy of the Excerpt of Hearing Transcript , Dkt. No. 170, Case 1:23-cr-00004-JPB-JSA-2, USA v. Harris, et al. (N.D. Ga.) is attached hereto as Exhibit 2.)

19. USMS elected to rescind the RADD contract effective October 31, 2026.

20. RADD is approximately 25 miles from this District's headquarters at the Richard B. Russell Federal Building and U.S. Courthouse in Atlanta ("Russell Courthouse").

**B. Relocation to Irwin County**

21. Irwin County Detention Center in Ocilla, Georgia is located outside of the Northern District of Georgia. It is more than 190 miles from this District's Atlanta headquarters at the Russell Courthouse.

22. Previous concerns about the facility ultimately led USMS to discontinue its use of Irwin County to house federal detainees. For example, in May 2021, news agencies and public interest groups reported on forced and "coerced sterilizations" at Irwin County, with detainees describing "horrible and abusive

conditions overall."[3]

23. Irwin County was reopened in 2025 after the facility had been closed due to numerous investigations surrounding human rights abuses.[4] At least one lawsuit regarding conditions at Irwin County, asserting the failure to "provide constitutionally adequate medical care and custodial care" resulting in the wrongful death of a former detainee while detained at Irwin County, "after having been improperly transferred [to Irwin County] from the Gwinnett County Detention Center" remains pending. *See* Complaint, Dkt. No. 1, *Miller v. Gwinnett County et al.*, Case 1:25-cv-07212-ELR (N.D. Ga.).

24. On or about September 21, 2026, USMS started relocating RADD detainees to Irwin County. To date, the USMS relocated at least one Client Detainee to Irwin County and plans to complete the relocation of all Client Detainees by October 31, 2026.

25. USMS is responsible for ensuring that FDP correspondence to Client

---

[3] *See e.g.* Georgia Recorder, ICE to close Irwin Detention Center Where Women Alleged Abuse, May 20, 2021 (available at https://georgiarecorder.com/2021/05/20/ice-to-close-irwin-detention-center-where-women-alleged-abuse/, last visited October 6, 2026); *see also* Southern Poverty Law Center, Inside Irwin County: Letters from a Notorious ICE Detention Center, October 2, 2020 (available at https://www.splcenter.org/resources/stories/inside-irwin-county-letters-notorious-ice-detention-center/, last visited October 6, 2026)

[4] CBS News, *Georgia Federal Detainees Private Prison Transfer*, September 18, 2026 (available at https://www.cbsnews.com/news/georgia-federal-detainees-private-prison-transfer/, last visited October 6, 2026).

Detainees, including those containing attorney-client communications ("Legal Mail"), is transported to Client Detainees and has failed to do so. Instead of transporting Client Detainee Legal Mail, FDP has learned that the Legal Mail has been abandoned at RADD or shredded.

26. Detainees housed at Irwin County who need to arrive at the Russell Courthouse by 8:30 a.m., would need to rise by 3:30 a.m. and leave Irwin County by 5:00 a.m. The same detainee would arrive back at Irwin County at approximately 9:00 p.m.

**C. <u>FDP</u>**

27. FDP's mission includes providing "exceptional, compassionate, cutting-edge, and client-centered representation grounded in respect for the dignity and humanity of every person [it] serve[s]."

28. FDP's duty station is in Atlanta, Georgia.

29. FDP attorneys and other professionals will be required to spend more than three hours traveling from their duty station to meet a Client Detainee in person at Irwin County *before* the post-arrival wait at the facility even commences.

30. The roundtrip travel time from the FDP duty station to Irwin County is approximately six-hours, not including additional time should FDP staff encounter traffic, any time spent meeting with a client, or any time that will be necessitated by overnight stays due to the distance.

**D. Prior Efforts to Prevent the Relocation of Client Detainees**

31. In or around August 2026, the U.S. District Court informed FDP about the real possibility that USMS would relocate federal pretrial detainees from RADD to Irwin County.

32. On August 7, 2026, the FDP Executive Director wrote to the Chief Judge for the Northern District of Georgia expressing FDP's concerns regarding the possibility that federal pretrial detainees from this district may be moved from RADD to Irwin County. *See* Ex. 1, Aug. 7 FDP Ltr. at 1.

33. In the FDP Letter, the FDP Executive Director outlined the "substantial impact such a move would have on the [FDP], Criminal Justice Act panel attorneys, and most importantly, the ability of detained individuals in our district to meet and communicate meaningfully with their counsel." *Id.* at 1.

34. The FDP Executive Director further outlined FDP's concerns regarding the resulting cost, suitability of Irwin County, and access to counsel and Sixth Amendment concerns. *Id.* at 1-4.

35. FDP determined that the financial impact to the organization would be "substantial." "[T]ravel costs alone would add approximately $1.3 million annually to FDP"s budget" and "[b]ecause of the length of the trip, some visits may also require overnight lodging and per diem, further increasing those costs." *Id.* at 2.

36. FDP also determined "[t]he cost to FDP cannot be measured solely in

mileage and travel expenses" and that "[s]ix to eight hours spent traveling to [Irwin County] is time an attorney, investigator, mitigation specialist, or other staff member cannot devote to other clients and cases." *Id.*

37. In the letter, the FDP also expressed concerns regarding the relocation to Irwin County in the FDP Letter, based on Irwin County's history because several years ago, investigations by nonprofit organizations documented serious allegations of mistreatment and abuse involving immigrants detained at Irwin County. *Id.* at 3.

38. On August 12, 2026, the Honorable Leigh M. May, Chief Judge of the U.S. District Court for the Northern District of Georgia wrote to the U.S. Department of Justice, "on behalf of the entire Court with an important and urgent request: To save costs, prevent delay, and protect the interests of all stakeholders, please ensure that [RADD] continues to house pre-trial detainees for this District." *See* Exhibit 1, Aug. 12 Chief Judge May Letter, at 1.

39. On or about September 18, 2026, USMS publicly confirmed it will relocate all RADD detainees to Irwin County, beginning the week of September 21, 2026, and continuing in waves until complete, through October 31, 2026.

### E. Irreparable Harm to FDP and its Clients

40. The events described above will significantly impact FDP's ability to achieve the organization's mission.

41. The Sixth Amendment requires guarantees every criminal defendant

the effective assistance of counsel for his or her defense. It also affords criminal defendants the right to a speedy trial. The Fifth Amendment and Fourteenth Amendments guarantee due process of law and the right to a fair trial for criminal defendants.

42. FDP is bound by the standards set forth in the CJA and CJA Plan in discharging its duties in the defense of an accused in our adversarial criminal justice system, and must meet governing ethical and professional standards.

43. For example, the ABA Criminal Justice Standards provide that "Defense counsel should make every reasonable effort to meet in person with the client" and that counsel should interview a client "as many times as necessary for effective representation." ABA Defense Function Standard 4-3.3(b). The ABA Defense Function Standard 4-3.1(f) also provides that defense counsel should actively work to maintain an effective and regular relationship with every client and expressly states that the obligation "is not diminished by the fact that the client is in custody."

44. Telephone and video-conferencing capabilities are not comparable substitutes for in-person visits and utilizing such mediums alone are insufficient to meet FDP's ethical and professional obligations.

45. To discharge FDP's ethical and professional obligations to its clients, FDP must still meet its clients in person because in-person meetings are essential to

carrying out FDP's mission in compliance with governing standards and practice.

46. The FDP already shoulders significant caseloads. The cumulative effect of multiplying that burden across various FDP defense teams and across a substantial detained-client population will impact FDP's workload. It will inevitably require FDP to curtail visits to Client Detainees.

47. Multiple FDP attorneys have reported that curtailing in person meetings with clients results in the deterioration of attorney-client communications. Multiple FDP attorneys and professionals have also observed that curtailing in person meetings with clients results in the deterioration of FDP defense teams' relationships with its detained clients.

48. FDP has already been forced to spend substantial time, focus, energy and resources in addressing this issue, which will only continue, and at a more significant rate, if USMS is permitted to complete its planned Client Detainee relocations.

49. FDP (and its clients) will be irreparably harmed if the above conduct is not preliminarily and permanently enjoined.

## CLAIMS

### FIRST CAUSE OF ACTION
### (Violation of Sixth Amendment Right to Counsel)

50. FDP restates and incorporates the allegations in the preceding paragraph 1 through 49 as if fully set forth herein.

51. The Sixth Amendment guarantees a defendant the effective assistance of counsel for their defense in all criminal prosecutions.

52. The USMS relocation of Client Detainees to Irwin County will necessitate at minimum six hours of travel for FDP to be able to gain in person access to Client Detainees.

53. The substantial travel time will force FDP to curtail visits, thereby reducing Client Detainees' access to counsel.

54. Therefore, the USMS relocation constitutes a substantial interference with the Client Detainees' right to counsel, in violation of the Sixth Amendment.

**SECOND CAUSE OF ACTION**
**(Violation of Constitutional Due Process Rights)**

55. FDP restates and incorporates the allegations in the preceding paragraph 1 through 54 as if fully set forth herein.

56. The Fifth Amendment and Fourteenth Amendment guarantee the accused due process rights and the right to a fair trial.

57. The mass relocation will deprive Client Detainees of the ability to sufficiently participate in their legal defense, including the ability to meaningfully communicate with FDP attorneys and other professionals, recall timelines, assess plea offers, or assist in assembling an effective defense due, in significant part, to the severe sleep impairment that will result in the revised transportation schedule that will be required to transport Client Detainees from Irwin County to the Russell

Courthouse for hearings and trial.

58. Thus, the USMS relocation constitutes a substantial interference with the Client Detainees' due process rights.

**THIRD CAUSE OF ACTION**
**(Violation of the Administrative Procedure Act)**

59. FDP restates and incorporates the allegations in the preceding paragraph 1 through 58 as if fully set forth herein.

60. USMS's governing regulations dictate that USMS is responsible for Client Detainees' Legal Mail.

61. USMS's regulations mandate that USMS is responsible for:

> Maintenance of custody, management control, and disposal of property and money seized or forfeited *pursuant to any law enforced or administered by the Department of Justice*, when the property is seized by the U.S. Marshals Service *or delivered to the U.S. Marshals Service in accordance with regulations*; and administer the Department of Justice Asset Forfeiture Fund.

28 C.F.R. § 0.111(i) (emphasis added).

62. USMS is not permitted to destroy or abandon Client Detainee Legal Mail in furtherance of the relocation to Irwin County. Legal Mail maintains a unique status because privileged legal material is subject to heightened protections not afforded standard detainee property. *Wolff v. McDonnell*, 418 U.S. 539, 574 (1974).

63. USMS's destruction and abandonment of Client Detainees' legal mail at RADD and refusal to transport the Legal Mail to Irwin County where it is

relocating the Client Detainees is contrary to its own regulations.

64. USMS's abandonment of Client Detainee Legal Mail and refusal to transport the Legal Mail to Irwin County is arbitrary and capricious, and violates the Administrative Procedure Act.

**FOURTH CAUSE OF ACTION**
**(Violation of the Administrative Procedure Act)**

65. FDP restates and incorporates the allegations in the preceding paragraphs 1 through 64 as if fully set forth herein.

66. The RADD Contract was set to expire in February of 2028. USMS decided to terminate the RADD Contract effective October 31, 2026.

67. USMS has not provided any justification for the relocation of Client Detainees to Irwin County, but has expressed concern regarding the quality of care and safety at RADD.[5]

68. However, Irwin County is operated by LaSalle Corrections. There have been several civil lawsuits and human rights complaints filed about facilities run by LaSalle Corrections, including about conditions and practices at Irwin County. Previous concerns about the facility ultimately led USMS to discontinue its use of Irwin County for federal detainees. USMS has not provided any information to FDP

---

[5] *See* GPB News Radio, *Plan to move hundreds of pretrial detainees from Atlanta area to South Georgia draws challenges*, October 1, 2026 (available at https://www.gpb.org/news/2026/10/01/plan-move-hundreds-of-pretrial-detainees-atlanta-area-south-georgia-draws, last visited October 6, 2026).

that would allow FDP to conclude conditions at Irwin County have improved.

69. To the extent USMS maintains the reason for its relocation of Client Detainees from RADD to Irwin County is because of concerns regarding quality of care and safety, the explanation runs counter to the evidence, as such, the decision was and remains arbitrary and capricious, in violation of the Administrative Procedures Act.

70. USMS's decision to rescind its RADD contract more than twelve months before the expiration date *before* identifying a suitable alternative[6] that would not unreasonably infringe on the right to counsel or violate the Administrative Procedures Act was and remains arbitrary and capricious, and further independently violates the Administrative Procedures Act.

## **REQUEST FOR RELIEF**

WHEREFORE, FDP respectfully requests that the Court:

(a.) Declare that the USMS relocation of the Client Detainees from RADD to Irwin County violates the Sixth Amendment to the U.S. Constitution by unreasonably interfering with Client Detainees' right to counsel;

(b.) Declare that the USMS relocation of the Client Detainees from

---

[6] FDP maintains that the pretrial detention facility should be located within sufficient distance from the Atlanta Courthouse such that USMS does not unreasonably interfere with the right of access to counsel, due process rights, the right to a fair trial, or violate the APA ("Suitable Pretrial Detention Facility").

RADD to Irwin County violates the Client Detainees' due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution;

(c.) Declare that USMS's destruction and/or abandonment of Legal Mail and refusal to transport the Legal Mail to Irwin County where the Client Detainees are and will be housed is arbitrary and capricious and a violation of the Administrative Procedure Act;

(d.) Declare that USMS's decision to relocate Client Detainees to Irwin County before finding a suitable detention center that does not unreasonably interfere with the right of access to counsel is arbitrary and capricious and a violation of the Administrative Procedure Act.

(e.) Preliminarily and permanently enjoin USMS and its marshals, agents, servants, employees, and attorneys, and all persons acting in concert or participation with them, from destroying or abandoning Client Detainees from maintaining their Legal Mail, or in the alternative enter an Order pursuant to 28 U.S.C. § 1561(a) and this court's inherent powers enjoining the same.

(f.) Preliminarily and permanently enjoin USMS and its marshals, agents, servants, employees, and attorneys, and all persons acting in concert or participation with them, requiring them to house Client Detainees at a Suitable Pretrial Detention Facility within a specified time period as determined by the Court, or in the alternative enter an Order pursuant to 28 U.S.C. § 1561(a) and this court's

inherent powers enjoining the same

(g.) Award FDP's attorneys' fees, costs, and other expenses to the extent permitted by law; and

(h.) Award such other and further relief as the Court determines to be just and proper.

Dated October 6, 2026.

Respectfully submitted,

*/s/ Uchenna Ekuma-Nkama*
Uchenna Ekuma-Nkama
Georgia Bar No. 957861
Alize D. Mitchell
Georgia Bar No. 349963
Lauren J. Towell
Georgia Bar No. 305478
DENTONS US LLP
303 Peachtree St. NE, Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
uchenna.ekuma-nkama@dentons.com
alize.mitchell@dentons.com
lauren.towell@dentons.com

*Attorneys for Plaintiff*
*Federal Defender Program, Inc.*